UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GERMAN A. CENTENO, ET AL.,    )
    )
    Plaintiffs,    )
    )    CIVIL ACTION NO.
VS.    )
    )    3:14-CV-3696-G
FACILITIES CONSULTING GROUP,    )
INC., ET AL.,    )
    )
    Defendant.    )

## MEMORANDUM OPINION AND ORDER

Before the court are the defendants' motions to dismiss under Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) ("Motions to Dismiss") (docket entry 10).

For the reasons stated below, the court denies the defendants' Rule 12(b)(1) motion

but grants the defendants' Rule 12(b)(6) motion with respect to all of the plaintiffs'

claims.  However, the court grants the plaintiffs' leave to replead claims that accrued

on and after October 15, 2011.

## I. BACKGROUND

### A. Factual Background

The plaintiffs, German Centeno and Rubilio Centeno, accuse the defendants,

Facilities Consulting Group, Inc. ("FCG"), and Edwin Mendenhall, of failing to pay

overtime and travel compensation as required by the Fair Labor Standards Act

("FLSA").  Complaint Under 29 U.S.C. 201-216 Overtime Wage Violations

("Complaint") ¶¶ 15-18 (docket entry 1).  According to the complaint, FCG served as

the plaintiffs' employer -- as that term is defined in the FLSA -- during the relevant

period.  *Id.* ¶ 3.  Mendenhall worked as a "corporate officer and/or owner and/or

manager . . . who runs the day-to-day operations of the Defendant Company for the

relevant time period" and was responsible for controlling the plaintiffs' work

schedules and paying their wages.  *Id.* ¶ 4.  The plaintiffs contend their employment

falls within the FLSA's coverage because "the materials and goods that [they] used on

a constant and/or continual basis and/or that were supplied to them by the

Defendants to use on the job moved through interstate commerce prior to and/or

subsequent to Plaintiffs' use of the same."  *Id.* ¶ 11.  Moreover, the plaintiffs aver that

FCG qualifies as a covered enterprise, thus bringing all of its employees within the

FLSA's coverage.  See *id.* ¶¶ 12-14; *see also* discussion of enterprise coverage *infra* pp.

8-10.

Rubilio Centeno began working for the defendants in 2000 as a painter and

foreman in construction, while German Centeno began similar work the following

year.  *Id.* ¶¶ 9, 10.  From their respective start dates through approximately

October 15, 2012, both plaintiffs allege they worked "an average of 60 hours per

week" but failed to receive the statutorily mandated rate of time-and-a-half for hours

worked in excess of forty.  *Id.* ¶¶ 15, 17.  In a roughly two-year period between October 2012 and October 2014, both defendants assert they "performed 7 overtime hours per week that went completely unpaid: 6 overtime hours of weekly travel time and one overtime hour for daily loading and unloading which Defendants refused to pay any wages for."  *Id.* ¶¶ 16, 18.  The plaintiffs claim the defendants "knew of the overtime requirements of the" FLSA but nevertheless "willfully and intentionally refused to pay Plaintiffs' overtime wages."  *Id.* ¶ 19.

In 2012, the Department of Labor ("DOL") investigated claims that FCG violated the FLSA.  *See* Receipt for Payment of Back Wages, Employment Benefits or Other Compensation for German Centeno, Exhibit A-1 to Defendants' Appendix (docket entry 12); Receipt for Payment of Back Wages, Employment Benefits or Other Compensation for Rubilio Centeno, Exhibit A-2 to Defendants' Appendix (collectively "Receipts for Payments").  As a result of this investigation, on August 10, 2012 both Rubilio and German Centeno signed receipts for payment of back wages, employment benefits, and other compensation for services provided between April 3, 2010 and February 11, 2012.  Receipts for Payments.  To secure the necessary signatures, FCG issued checks to both plaintiffs for an amount that the Wage and Hour Division of the DOL found appropriate to remedy the FLSA violations.  Facilities Consulting Group, Inc.'s Checks to German A. Centeno, Exhibit A-3 to Defendants' Appendix; Facilities Consulting Group, Inc.'s Checks to Rubilio De Jesus

Centeno, Exhibit A-4 to Defendants' Appendix (collectively, "Checks for Plaintiffs");

*see also* Receipts for Payments.  Both receipts specifically stated that an employee's

"acceptance of this payment of wages and other compensation due under the FLSA

based on the findings of the Wage and Hour Division" waives the employee's right to

"bring suit . . . for the payment of such unpaid minimum wages or unpaid overtime

compensation for the period of time indicated [on the receipt] and an equal amount

of liquidated damages, plus attorney's fees and court costs under Section 16(b) of the

FLSA."  Receipts for Payments.

 According to the plaintiffs, after settling the above dispute, the defendants

promised the plaintiffs that "they would repay all the overtime hours owed to

Plaintiffs" from periods not covered under the settlement "as a way to convince

Plaintiffs not to bring their own FLSA lawsuit."  Complaint ¶ 19.  However, the

plaintiffs claim, the defendants refused to fulfill their promises and "instead

implemented a system where they failed to pay [the plaintiffs] for work time related

to travel…."  *Id.*  Thus, the plaintiffs initiated the present action "on behalf of

themselves and all others similarly situated under 29 U.S.C. [§] 216(b)" to remedy

the defendants' "willful[ ] and intentional[ ]" actions.  *Id.* at 1, ¶ 19.

## B.  Procedural Background

 The plaintiffs filed their complaint with this court on October 15, 2014.  *See*

Complaint.  In response to the complaint, the defendants filed these motions to

dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on

November 24, 2014. *See* Motions to Dismiss. The plaintiffs then filed a timely

response which was followed by the defendants' timely reply. *See* Plaintiffs' Response

(docket entry 13); Defendants' Reply (docket entry 14). The motions are now ripe

for decision.

## II. ANALYSIS

### A. Applicable Law

#### 1. *Rule 12(b)(6) Motion to Dismiss Standard*

"In considering a motion to dismiss for failure to state a claim, a district court

must limit itself to the contents of the pleadings, including attachments thereto."

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED.

R. CIV. P. 12(b)(6)). However, a court only considers a defendant's attachment if it

is "referred to in the plaintiff's complaint and [is] central to her claim." *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Causey v. Sewell*

*Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)), *cert. denied*, 552 U.S.

1182 (2008). Documents meeting these requirements "assist[ ] the plaintiff in

establishing the basis of the suit, and the court in making the elementary

determination of whether a claim has been stated." *Collins*, 224 F.3d at 499. "To

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to

state a claim to relief that is plausible on its face.'" *In re Katrina Canal*, 495 F.3d at

205 (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice

pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678.  The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (*quoting* FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible."  See *id.* at 680, 683.

### 2. *Relevant Elements of a Fair Labor Standards Act Claim*

#### a. Employment Relationship

The Fair Labor Standards Act, 29 U.S.C. §§ 201-219, applies broadly to employers, defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . .." 29 U.S.C. § 203(d).  "[A]ny individual employed by an employer" qualifies as an employee, *id.* § 203(e)(1), and the term employ "includes to suffer or permit to work." *Id.* § 203(g).  With the circularity of these definitions producing greater confusion than clarity, the Supreme Court has provided guidance.

The Court concluded that "economic reality" determines whether an employment relationship exists.  *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).  In implementing this "economic reality" test, courts consider whether the potential employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)).  A court should apply this test to all alleged employers because "the FLSA 'contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA.'"  *Kaminski v. BWW Sugar Land Partners*, Civil Action No. H-10-551, 2010 WL 4817057, at *2 (S.D. Tex. Nov. 19, 2010) (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991)).  Therefore, if both a corporation and an individual satisfy the "economic reality" test, the individual "is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Id.* (citation omitted).

b.  Individual and Enterprise Commerce Requirements

Once an employee has identified an individual or corporation qualifying as an FLSA employer, he must next establish that the employment is within the scope of the FLSA's coverage.  The FLSA covers any employee "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in

an enterprise engaged in commerce or in the production of goods for commerce . . .." 29 U.S.C. § 207.  This text indicates that the FLSA can apply through either individual or enterprise coverage.

An employee qualifies for individual coverage if he is either "engaged in commerce *or* in the production of goods for commerce."  *Id.* (emphasis added).  The Fifth Circuit has concluded that being "engaged in commerce" requires work that is "so directly and vitally related to the functioning o[f] an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated activity."  *Williams*, 595 F.3d at 621 (quoting *Sobrinio v. Medical Center Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)).  Employees are engaged "in the production of goods for commerce" if they are involved with any "incidental operation preparatory to putting goods into the stream of commerce."  *Western Union Telegraph Company v. Lenroot*, 323 U.S. 490, 503 (1945); *see also* 7 N. Peter Lareau, LABOR AND EMPLOYMENT LAW § 177.03[2] (Matthew Bender 2014).

In contrast to individual coverage which qualifies single employees for FLSA rights, enterprise coverage brings all individuals employed by a business within the FLSA's scope.  Predictably, qualifying as an enterprise is the first requirement for enterprise coverage.[1]  But an enterprise must also pass a dollar volume test and

---

[1]      The defendants do not dispute that their business operation qualifies as an enterprise.  *See* Defendants' Brief in Support of Their Motion to Dismiss (Defendants' Brief) at 3-4 (docket entry 11); Defendants' Reply at 6.  Therefore, the

(continued...)

commerce standard to trigger FLSA coverage.  Lareau, *supra*, § 177.04[2].  The enterprise's "annual gross volume of sales made or business done [must not be] less than $500,000 . . .."  29 U.S.C. § 203(s)(1)(A)(ii).  If the enterprise passes the dollar volume test, it must then satisfy a commerce standard similar to that used when analyzing individual coverage.  This standard requires having "employees engaged in commerce or in the production of goods for commerce, or [having] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  29 U.S.C. § 203(s)(1)(A)(i).  The inclusion of the second clause (*i.e.*, "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person") was "designed to regulate enterprises dealing in articles acquired intrastate after travel in interstate commerce."  Lareau, *supra*, § 177.04[2][a] (citing *Schultz v. Kip's Big Boy, Inc.*, 431 F.2d 530 (5th Cir. 1970)).  An enterprise satisfies the commerce test "if during the annual period which it uses in calculating its annual sales . . ., it regularly and recurrently has *at least two or more employees* engaged in" the above mentioned activities.  29 C.F.R. § 779.238 (emphasis added).

---

[1](...continued)
court does not discuss the statutory definition of enterprise and its application to the facts of this case.

c. Overtime and Travel Pay Under the FLSA

This case concerns two specific employee rights under the FLSA and related regulations.  First, 29 U.S.C. § 207 requires employees to receive "a rate not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of forty a week.  Second, employers must compensate covered employees for "[t]ime spent by an employee in travel as part of his principal activity . . .."  29 C.F.R. § 785.38.  The term "principal activity" includes activities "performed as part of the regular work of the employees in the ordinary course of business . . . [t]he work is necessary to the business and is performed by the employees, primarily for the benefit of the employer . . .."  *Vega ex rel. Trevino v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994) (alteration in original) (quoting *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)).  While home-to-work travel is not compensable, *see* 29 U.S.C. § 254, if "an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work" and is therefore compensable.  29 C.F.R. § 785.38.  To remedy violations of the above rights, the FLSA creates both a private cause of action and collective action:  "An action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more

employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

### d.   Waiving the § 216(b) Private Cause of Action

While 29 U.S.C. § 216(b) provides employees with a private cause of action to remedy FLSA violations, employees waive their judicial remedies when they accept payment from their employer after a DOL-supervised settlement. *See* 29 U.S.C. § 216(c). The statute states, "The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees . . ., and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under [§216(b)] to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages." *Id.* In slightly simpler prose, "[f]or there to be a valid waiver, section 216(c) simply requires (a) that the employee agree to accept the payment which the [DOL] determines to be due and (b) that there be payment in full." *Solis v. Hotels.com Texas, Inc.*, No. Civ. A. 3:03-CV-0618-L, 2004 WL 1923754, at *2 (N.D. Tex. Aug. 26, 2004) (Lindsay, J.) (citation omitted).

In some circumstances, a court can enforce a Section 216(c) waiver at the pleading stage of litigation. In *Dent v. Cox Communications Las Vegas, Inc.*, the Ninth Circuit affirmed the district court's dismissal of claims covered by an earlier DOL-

supervised settlement.  502 F.3d 1141, 1145-47 (9th Cir. 2007).  Given the

procedural history of the case, the Ninth Circuit stated that Rule 12(c), rather than

Rule 12(b)(6), was the proper method of dismissing the claims.[2]  *Id.* at 1143 n.3.

Despite the use of Rule 12(c) rather than Rule 12(b)(6), the Ninth Circuit's ruling

still indicates that courts can enforce Section 216(c) waivers at the pleading stage.

This approach is consistent with the legislative history behind Section 216(c).

The Fifth Circuit discussed the primary purpose behind Congress' insertion of the

waiver provision:

> The waiver provision found in Section 216(c) was added to
> the [FLSA] in 1949.  Prior to that time employers had
> been reluctant to reach voluntary settlements with
> employees over claims for back wages because courts had
> held that any purported waiver or release of rights to
> unpaid compensation was null and void as against public
> policy and lacking in consideration.  Thus an employer
> who settled a claim for back wages could never be sure that
> the employee with whom he settled would not later sue to
> collect liquidated damages and attorneys' fees.  The
> addition of the waiver provision was intended to change
> this situation and create an incentive for employers
> voluntarily to accept settlements supervised by the Wage
> and Hour Division.

---

[2]      The Ninth Circuit explained why the district court was incorrect to
grant the dismissal under Rule 12(b)(6):  "The defendants filed answers asserting
various defenses, including failure to state a claim on which relief can be granted.
They did not file their motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) until more than a month later, however.  Because such a motion must be
made before the defendant's responsive pleading, the defendants' motion should have
been treated as a motion for judgment on the pleadings.  Accordingly, we treat the
district court's dismissal of [plaintiff's] claims as a grant of a motion for judgment on
the pleadings."  502 F.3d at 1143 n.3 (citations omitted).

*Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977) (citing S. REP. No. 81-640, at 2241, 2249 (1949)). By shielding employers from "liquidated damages and attorneys' fees," the waiver provision is an incentive to employers to enter into DOL-supervised settlements, and enforcing waivers at the pleading stage of litigation maximizes this incentive. *Id.* Waiting until the summary judgment phase would force employers to devote additional time and money to an FLSA dispute already settled. Faced with the prospect of lengthy litigation, including discovery, even after a DOL-supervised settlement, many employers may avoid cooperation with the DOL altogether, leaving the entire dispute to the courts.

As importantly, from a practical perspective, discovery is generally unnecessary to demonstrate the existence of a valid waiver. If the defendants present waivers meeting Section 216(c)'s requirements, then absent a challenge to the authenticity of the documents or a claim of fraudulent inducement,[3] the court can easily determine if

---

[3]     When a plaintiff sufficiently pleads that he was fraudulently induced to sign the release, a court arguably should wait until the summary judgment stage to enforce a Section 216(c) waiver. In *Sneed*, the Fifth Circuit notes in passing that "the employee has never claimed that the release was obtained through fraud." 545 F.2d at 538. This court, in *Solis*, indicated that the Fifth Circuit's "oblique reference" to a potential fraud exception "is insufficient to serve as a basis for circumventing the clear and unequivocal provisions of § 216(c)." 2004 WL 1923754 at *2. However, the plaintiffs in *Solis* "failed to create a genuine issue of material fact that the alleged fraudulently altered records were actually relied on by the DOL in determining the back wages due." *Id.* at *3. If this court received a case in which a plaintiff agreed to a DOL-supervised settlement and received full payment, but sufficiently pleaded fraudulent inducement, the court may have to assess if the Section 216(c) waiver provision possesses a fraud exception.

- 14 -

the employee agreed to accept the settlement offer and was paid in full.  *Solis*, 2004 WL 1923754, at *2.  Therefore, when the pleadings, supplemented by attachments that can be considered at the motion to dismiss stage, demonstrate a valid Section 216(c) waiver, a court should grant a motion to dismiss for failure to state a claim. See *Sneed*, 545 F.2d at 539 (noting that a court should not consider the equity of the settlement but only "whether there was a waiver as defined by section 216(c)").

The question remains as to what Rule 12(b) motion a defendant should file to assert the waiver defense.  To answer this question, the court must place the waiver on one side or the other of "the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy."  See *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 510-16 (2006). Admittedly, federal courts have been "less than meticulous" in differentiating the two sides of this dichotomy, leading a seminal treatise to remark that "'[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief -- a merits-related determination.'"  *Id.* at 511 (quoting 2 J. Moore et al., MOORE'S FEDERAL PRACTICE § 12.30[1] (3d ed. 2005)).  Recently, the Supreme Court provided a default presumption to guide courts' analysis of the issue: "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."  *Id.* at 516.

The only portion of the FLSA dealing with jurisdiction states that "[a]n action to recover the liability [under the FLSA] . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction . . .." 29 U.S.C. § 216(b). Section 216(c), the portion of the statute containing the waiver, does not explicitly connect this waiver with a federal court's jurisdiction to hear a claim. *See* 29 U.S.C. § 216(c); see also *Min Fu v. Hunan of Morris Food Inc.*, Civ. No. 12-05871 (KM), 2013 WL 5970167, at *4 (D. N.J. Nov. 6, 2013) ("[T]he waiver provision of 29 U.S.C. [§] 216(c) . . . which is the statutory basis of the DOL Release, contains no such limitation on jurisdiction."). Therefore, the § 216(c) waiver falls squarely on the ingredient-of-claim-for-relief side of the dichotomy and does not deprive a federal court of subject matter jurisdiction.

### e.  Statute of Limitations

The Portal-to-Portal Act, 29 U.S.C. §§ 251-262, provides the relevant limitations periods for bringing claims under the FLSA. Any action under the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Thus, an employer's intent determines whether FLSA claims possess either a two-year or three-year statute of limitations. Because the statute is silent as to the method of computing time, the two and three-year statutes of limitations are

calculated by excluding the day that triggers the period.  *See* 29 U.S.C. § 255; FED. R. CIV. P. 6(a)(1).

In certain circumstances, courts have applied principles of equitable tolling to the FLSA's statutes of limitations.  See, *e.g.*, *Lee v. Metrocare Services*, 980 F. Supp. 2d 754, 769 (N.D. Tex. 2013) (O' Connor, J.) (citing *Shidler v. Alarm Security Group, LLC*, 919 F. Supp. 2d 827, 829-30 (S.D. Tex. 2012)) (noting that in extraordinary circumstances a court can toll an FLSA statute of limitations.); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 259-60 (S.D. N.Y. 2008) (applying equitable tolling because the defendants failed to post a notice describing relevant FLSA rights); *Adams v. Inter-Con Security Systems, Inc.*, 242 F.R.D. 530, 543 (N.D. Ca. 2007) ("Because plaintiffs have diligently pursued their [FLSA] legal rights by soliciting information from defendants, and defendant's refusal has delayed that pursuit, equitable tolling is appropriate.").  This approach indicates that the FLSA's statutes of limitations are not jurisdictional.  See, *e.g.*, *Perez v. United States*, 167 F.3d 913, 915 (5th Cir. 1999) (noting that a statute of limitations being jurisdictional implies that equitable tolling cannot apply); *Ramadan v. Chase Manhattan Corporation*, 156 F.3d 499, 500 (3d Cir. 1998) ("A limitation period is not subject to equitable tolling if it is jurisdictional in nature.") (citing *Shendock v. Director, Office of Workers' Compensation Programs*, 893 F.2d 1458, 1466-67 (3d Cir.) [, *cert. denied*, 498 U.S. 826 (1990)]).

B.  Application of Law to the Present Dispute

None of the defendants' contentions, when appropriately characterized, attack the court's jurisdiction to hear the dispute.  Therefore, the court possesses discretion to consider these contentions in any order it deems appropriate.  The court begins by determining the appropriate FLSA statute of limitations and applying it to the present dispute.  Next, the court applies the FLSA's Section 216(c) waiver provision. The court concludes its analysis by considering whether the complaint's factual allegations state any claims for relief that are not already barred by the analysis in the prior two sections.

1.  *The FLSA's Three-Year Statute of Limitations Bars the*
*Plaintiffs' Claims Arising Before October 15, 2011*

In failing to address the statute of limitations defense in their response, the plaintiffs effectively concede that the FLSA bars any claims arising before October 15, 2011.  *See* Plaintiffs' Response; *see also* Defendants' Reply at 1-2 ("Plaintiffs' Response did not address the application of the statute of limitations.  As a result, it is uncontested that Plaintiffs are barred from recovering allegedly unpaid wages for services that occurred prior to October 15, 2011, and such claims should be dismissed with prejudice.") (citations omitted).  By referencing only the FLSA's three-year statute of limitations for "willful" violations, the defendants accept the plaintiffs' characterization of the violations as "willful[ ] and intentional[ ]."  Defendants' Reply at 1; Defendants' Brief at 5; Complaint ¶ 19; *see also* 29 U.S.C. § 255.  The court

finds no reason why the statute of limitations should not apply and thus concludes

that all claims arising before October 15, 2011 are barred.

### 2. *The Department of Labor Supervised Settlement Waives the Plaintiffs' Claims From the Period Covered by the Settlement*

The defendants incorrectly asserted the waiver defense in the form of a Rule

12(b)(1) motion rather than a Rule 12(b)(6) motion.  This procedural miscue,

however, did not affect the plaintiffs' ability to adequately brief the issue.  The

plaintiffs contend that courts should assess the validity of a Section 216(c) waiver at

the summary judgment stage of litigation.  Plaintiffs' Response at 5 ("Whether or not

there was a valid agreement and waiver in the present case is an issue of fact that will

necessarily require discovery.").  *Contra* Defendants' Reply at 3 ("The case law

supports handling the impact of the DOL-supervised settlement at the Motion to

Dismiss stage.").  This argument conflicts with using either Rule 12(b)(6) or Rule

12(b)(1) as a procedure for enforcing the waiver.  In other words, the plaintiffs'

briefing appears in no way contingent on which rule the court uses to enforce the

waiver.

More importantly, later in this opinion, the court grants the plaintiffs leave to

replead with respect to claims covered by the DOL settlement but not barred by the

statute of limitations.  This decision eliminates any possibility that the motion's

conversion will permanently prejudice the plaintiffs.  For these reasons, the court will

analyze the waiver defense as if it were included in the defendants' Rule 12(b)(6)

motion. *Lopez-Santiago v. Coconut Thai Grill*, Civil Action No. 3:13-CV-4268-D, 2014 WL 840052, at *3 n.4 (N.D. Tex. Mar. 4, 2014) (Fitzwater, C.J.) ("Districts courts can in their discretion treat a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and analyze it under the Rule 12(b)(6) standard.") (citing *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992)).

The receipts and checks included in the defendants' appendix indicate that the DOL oversaw a settlement between the parties and that FCG paid the plaintiffs the appropriate amount of back wages due in full.[4] *See* Receipts for Payments; Checks for Plaintiffs. As discussed above, "[f]or there to be a valid waiver, section 216(c) simply requires (a) that the employee agree to accept the payment which the [DOL] determines to be due and (b) that there be payment in full." *Solis*, 2004 WL 1923754, at *2 (internal quotation marks omitted). The court concludes that these two conditions are met, so that Section 216(c)'s waiver provision bars any FLSA claims "for the period beginning with the workweek ending [April 3, 2010] through the workweek ending" February 11, 2012. Receipts for Payment.

---

[4] In the complaint, the plaintiffs identify a prior FLSA dispute involving the defendants. Complaint ¶ 16. While the complaint fails to provide specifics regarding the settlement of that dispute, the parties' briefing on the motions to dismiss clarifies that the relevant settlement was overseen by the DOL and concerned the period between April 3, 2010 and February 11, 2012. Defendants' Brief at 6; Plaintiffs' Response at 4. This settlement is central to the plaintiffs' claims because it could serve as a valid waiver under § 216(c). Therefore, the court can consider the documents attached to the defendants' motions which concern the settlement. See *In re Katrina Canal*, 495 F.3d at 205.

### 3. *The Complaint Fails to State Claims for FLSA Violations*

#### a. The Complaint Contains Allegations Supporting a Plausible Inference that the Defendants Served as the Plaintiffs' Employers

The plaintiffs' allegations indicate that both FCG and Mendenhall served as the plaintiffs' employers. German and Rubilio Centeno aver that the defendants employed them as painters and construction employees. Complaint ¶¶ 9-10. As a corporate entity directly providing the plaintiffs with work, FCG serves as the plaintiffs' employer. See *id.* In fact, FCG appears to concede this point by including the DOL receipts for payment in its briefing. *See* Receipts for Payments. To buttress the claim that Mendenhall also qualifies as an employer, the complaint alleges that he "is a corporate officer and/or owner and/or manager of the Defendant Company who runs the day-to-day operations of the Defendant Company for the relevant time period and was responsible for paying Plaintiffs' wages for the relevant time period . . . and controlled Plaintiffs' work and schedule . . .." Complaint ¶ 4. At a minimum, these allegations satisfy two of the factors included in the "economic reality" test (*i.e.*, supervising and controlling employees' work schedules or conditions of employment and determining the rate and method of payment). See *Gray*, 673 F.3d at 355. Therefore, plaintiffs have also sufficiently pleaded that Mendenhall served as their employer. The court will now assess whether the complaint creates a plausible inference that the relevant employment relationships fell within the FLSA's coverage.

b.  The Complaint's Allegations are Insufficient to Indicate the
Existence of Either Individual or Enterprise Coverage

The complaint includes nothing more than "a formulaic recitation of the

elements" necessary for both individual and enterprise coverage.  *Twombly*, 550 U.S.

at 555.  In relevant part, the complaint states:

> 11.  Defendant's [sic] business activities involve those to
> which the Fair Labor Standards Act applies.  Both the
> Defendants' business and the Plaintiffs' work for the
> Defendants affected interstate commerce for the relevant
> time period.  Plaintiffs' work for the Defendants affected
> interstate commerce for the relevant time period because
> the materials and goods that Plaintiffs used on a constant
> and/or continual basis and/or that were supplied to them
> by the Defendants to use on the job moved through
> interstate commerce prior to and/or subsequent to
> Plaintiffs' use of the same.  The Plaintiffs' work for the
> Defendants was actually in and/or so closely related to the
> movement of commerce while they worked for the
> Defendants that the Fair Labor Standards Act applies to
> Plaintiffs' work for the Defendants.
>
> 12.  Upon information and belief, the Defendant Company
> had gross sales or business done in excess of $500,000
> annually for the years 2010, 2011, 2012, and 2013.
>
> 13.  Upon information and belief, the Defendant
> Company's gross sales or business done are expected to
> exceed $500,000 annually for the year 2014.
>
> 14.  Furthermore, Defendants regularly employed two or
> more employees for the relevant time period who handled
> goods or materials that travelled through interstate
> commerce, or used instrumentalities of interstate
> commerce, thus also making Defendants' business an
> enterprise covered under the Fair Labor Standards Act.

Complaint ¶¶ 11-14.  The above text identifies all of the elements necessary for individual and enterprise coverage.  *See* 29 U.S.C. §§ 203, 207.  However, with regard to both coverage options, the complaint fails to provide factual allegations pertaining specifically to the dispute at issue.  As the defendants correctly state, "These allegations are completely devoid of any factual context . . .."  Defendants' Reply at 5. Consistent with many prior rulings of this court, allegations lacking in factual specificity justify dismissal for failure to state a claim.  See, *e.g.*, *Teaney v. Kenneth & Company Honey Do Services*, Civil Action No. 3:13-CV-4211-L, 2014 WL 3435416, at *4 (N.D. Tex. July 15, 2014) (Lindsay, J.) ("Plaintiff does not allege any facts whatsoever to support individual coverage.  He merely states in conclusory fashion that he was individually engaged in commerce.") (internal citation and quotations omitted); *Lopez-Santiago*, 2014 WL 840052, at *4 (dismissing FLSA claims where the plaintiffs plead, among other things, that their "work for the Defendants affected interstate commerce for the relevant time period because the materials and goods that Plaintiffs used on a constant and/or continual basis and/or that were supplied to them by the Defendants to use on the job moved through interstate commerce prior to and/or subsequent to Plaintiffs' use of the same"); *Morrow v. JW Electric, Inc.*, Civil Action No. 3:11-CV-1988-D, 2011 WL 5599051, at *3 (N.D. Tex. Nov. 16, 2011) (Fitzwater, C.J.) ("Rather than pleading specific facts that establish individual or enterprise coverage, plaintiff merely recites the statutory elements of FLSA coverage,

or asserts generalized facts that do not relate to the coverage issue.") (citing *Davis v. Dallas County*, 541 F. Supp. 2d 844, 849 (N.D. Tex. 2008) (Fitzwater, C.J.)).

Specifically with regard to enterprise coverage, the plaintiffs ask the court to accept their conclusory pleadings because "more detailed information on these issues will most often be in the hands of the defendant."  Plaintiffs' Response at 8 (citing *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-CV2359-T-23-TGW, 2008 WL 793660, at *2 (M.D. Fla. Mar. 24, 2008)); see also *Twombly*, 550 U.S. at 586-87 (Stevens, J., dissenting) ("[W]e have observed that in antitrust cases, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.") (citations and internal quotations omitted).  The Rule 12(b)(6) standard demands a "context-specific" inquiry "that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  Therefore, courts can consider the plaintiffs' ability to access information when determining if a plaintiff has sufficiently pleaded the elements necessary for enterprise coverage.  Although the plaintiffs' alleged lack of access to important information did not prevent a Rule 12(b)(6) dismissal in *Twombly*, the unique characteristics of this case could justify an alternative conclusion.

The court agrees with the plaintiffs that requiring specific factual allegations concerning the dollar volume requirement could lead to "gross speculation."

Plaintiffs' Response at 8 (quoting *Daniel*, 2008 WL 793660, at *2).  Individual

employees are rarely privy to factual specifics concerning their employer's volume of

sales for a given year.  If the court required plaintiffs to plead factual specifics in these

circumstances, it could force plaintiffs' attorneys to violate Federal Rule of Civil

Procedure 11 by including mere speculations in the pleadings.  FED. R. CIV. P.

11(b)(3) ("[T]he factual contentions [must] have evidentiary support or, if

specifically so identified, will likely have evidentiary support after a reasonable

opportunity for further investigation or discovery.").  Therefore, the court deems the

plaintiffs' pleadings regarding the dollar volume requirement sufficient.[5]

However, the plaintiffs' bare-bones allegations concerning the commerce

standard are insufficient.  Individuals often understand the nature of their employer's

business activities and thus can include some factual allegations indicating that their

employer meets the commerce standard.  Because these allegations could concern

other employees or goods and materials that the relevant employee does not work

with directly, courts should be less stringent in their demand for specificity when

compared to pleadings concerning information directly in the plaintiffs' control.

Nevertheless, the court demands plaintiffs do more than merely recite the text of

relevant statutes, regulations, or precedential court rulings.

---

[5]     The court notes that the defendants can quickly file a motion to dismiss
or for summary judgment, supported by tax returns and other pertinent financial
documents, if their annual gross volume of sales is actually less than $500,000.

In other words, the plaintiffs' pleadings concerning enterprise coverage require "further factual enhancement." *Twombly*, 550 U.S. at 557.  Drawing from the text of Fifth Circuit precedent and federal regulations, the complaint states, "Defendants regularly employed two or more employees for the relevant time period who handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce . . .."  Complaint ¶ 14; see also, *e.g.*, *Williams*, 595 F.3d at 621 (noting that being "engaged in commerce" includes work "so directly and vitally related to . . . an instrumentality or facility of interstate commerce . . ."); 29 C.F.R. § 779.238 ("An enterprise . . . will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if during the annual period which it uses in calculating its annual sales . . ., it regularly and recurrently has at least two or more employees engaged in such activities.").  Using relevant law to identify the elements necessary to plead a cause of action is only the initial step to drafting a complaint. Plaintiffs must then add substance to their complaint by including factual specifics. The plaintiffs' complaint leaves the court asking what goods or materials did the employees handle or what instrumentalities of interstate commerce did they use.  The

court concludes it is not unreasonable to require the plaintiffs to answer these questions.[6]

An alternative conclusion would authorize the use of form pleadings for enterprise coverage, an approach the court deems especially ill-advised in this case. Despite possessing specific facts concerning the elements of individual coverage, the plaintiffs' pleadings with regard to this form of coverage are also conclusory. *See* Complaint ¶ 11. This supports an inference that the conclusory pleadings regarding the commerce requirement of enterprise coverage resulted from careless and hasty drafting rather than an absence of access to information.

### 4. *Leave to Replead*

The court grants the plaintiffs' request to replead with respect to all claims arising from employment on or after October 15, 2011. *See* Plaintiffs' Response at 10; *Lopez-Santiago*, 2014 WL 840052, at *5 ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). The claims prior to this date are conclusively barred by the three-year statute of limitations. As for any claims arising from employment occurring between October 15, 2011 and February 11, 2012 (*i.e.*, those claims not barred by the statute of limitations but

---

[6]      Given this conclusion, the court does not need to assess whether the plaintiffs' pleadings are sufficient with regard to specific FLSA rights.

covered by the DOL-supervised settlement), the court concludes it is *not* "clear that the defects are incurable" and therefore the plaintiffs may replead these claims. *Lopez-Santiago*, 2014 WL 840052, at *5. The court's discussion in footnote three indicates that if the plaintiffs allege the defendants fraudulently induced them into agreeing to the DOL-supervised settlement, then they potentially could state a claim for relief. The absence of a fraud claim in the initial complaint makes it doubtful whether factual predicates exist for such a claim. Nevertheless, the plaintiffs should be granted the opportunity to replead such a claim, along with a reminder that Rule 9(b) imposes heightened pleading requirements for fraud. *See* FED. R. CIV. P. 9(b).

## III.  CONCLUSION

For the reasons discussed above, the defendants' Rule 12(b)(6) motion is **GRANTED** with respect to all claims. The claims arising before October 15, 2011 are **DISMISSED** with prejudice. However, the claims arising on or after October 15, 2011 are **DISMISSED** without prejudice. The plaintiffs are **GRANTED** the right to replead these latter claims, provided such amended pleading is filed and served by **January 30, 2015**. The defendants' motion to dismiss under Rule 12(b)(1) is **DENIED**.

**SO ORDERED**.

January 20, 2015.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**