UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GERMAN A. CENTENO, ET AL.,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | CIVIL ACTION NO. |
| VS.  ) | |
| ) | 3:14-CV-3696-G |
| FACILITIES CONSULTING GROUP,  ) | |
| INC., ET AL.,  ) | |
| ) | |
| Defendants.  ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (docket entry 17).  For the reasons discussed below, the defendants' motion is denied.

I.  BACKGROUND

A.  Factual Background

This case concerns a dispute under the Fair Labor Standards Act ("FLSA"). The plaintiffs, German Centeno and Rubilio Centeno, accuse the defendants, Facilities Consulting Group, Inc. ("FCG"), and Edwin Mendenhall ("Mendenhall"),

of failing to pay overtime and travel compensation mandated by the FLSA. In the paragraphs below, the court details the facts pertinent to the disposition of the present motion. For a detailed discussion of the factual history surrounding this case, see this court's earlier memorandum opinion of January 20, 2015. *See* Memorandum Opinion and Order at 1-4 (docket entry 15).

The plaintiffs allege that "[f]rom on or about October 15, 2011 through on or about October 15, 2012 [they] worked an average of 60 hours per week . . . [but were] never paid the extra halftime overtime rate for hours worked above 40 hours in a week as required by the Fair Labor Standards Act." First Amended Complaint Under 29 U.S.C. 201-216 Overtime Wage Violations ("Amended Complaint") ¶¶ 18, 21 (docket entry 16). Rubilio Centeno claims that during this same time period, the defendants "deducted 2 hours of work time from [his] paycheck each week and said 2 hours each week went completely unpaid." *Id.* ¶ 21. Moreover, in the approximately two-year period between October 16, 2012 and October 9, 2014, the plaintiffs contend they each "performed 7 overtime hours per week that went completely unpaid: 6 overtime hours of weekly travel time and one overtime hour for daily loading and unloading which Defendants refused to pay any wages for." *Id.* ¶¶ 20, 23. Because the plaintiffs were "required to report to a central facility operated by Defendants before travelling to various jobsites, [the plaintiffs] claim[ ] the time-and-

a-half overtime rate for the 7 completely unpaid overtime hours worked each week." *Id.*

A Department of Labor ("DOL") supervised settlement agreement covered a portion of the approximately three-year period addressed above. Specifically, the plaintiffs received DOL-approved compensation for the "period beginning with the workweek ending [April 3, 2010] through the workweek ending" February 11, 2012. Receipt for Payment of Back Wages, Employment Benefits or Other Compensation for German Centeno, Exhibit A-1 to Appendix in Support of Defendants' Motion to Dismiss ("Defendants' Appendix") (docket entry 19); Receipt for Payment of Back Wages, Employment Benefits or Other Compensation for Rubilio Centeno, Exhibit A-2 to Defendants' Appendix. The plaintiffs admit signing the Form WH-58s, which generally waive an employee's right to bring any claims for back wages from the time period covered by the agreement. *See* Amended Complaint ¶¶ 19, 22. However, the plaintiffs contend that they "could not and did not agree to waive [their] rights under the FLSA." *Id.* Although the plaintiffs were unable to "read or speak the English language," the forms were "not translated from English into Spanish" and the defendants provided no alternative notice regarding the legal effect of the Form WH-58s. *Id.* The employer also "led [them] to believe that [they] would need to sign the Receipt for Payment of Back Wages to receive the checks offered to [them] . . . ." *Id.*

B. <u>Procedural Background</u>

On January 20, 2015, this court issued a memorandum opinion (docket entry 15) granting the defendants' first motion to dismiss (docket entry 10) with respect to all of the plaintiffs' claims. The court dismissed with prejudice those claims barred by the FLSA's three-year statute of limitations, *i.e.*, claims which arose before October 15, 2011. Memorandum Opinion and Order at 28. However, with respect to claims arising on or after October 15, 2011, the court granted the plaintiffs the right to replead. *Id.* On January 30, 2015 the plaintiffs filed their first amended complaint. *See* Amended Complaint. The defendants then filed a motion to dismiss all of the plaintiffs' claims pursuant to Rule 12(b)(6). *See* FCG and Mendenhall's First Amended Motion to Dismiss Pursuant to Rule 12(b)(6) (docket entry 17). The plaintiffs filed a timely response, to which the defendants filed a timely reply. Plaintiffs' Response to Defendants' First Amended Motion to Dismiss Pursuant to Rule 12(b)(6) ("Plaintiffs' Response") (docket entry 20); FCG and Mendenhall's Reply in Support of Their First Amended Motion to Dismiss Under Rule 12(b)(6) (docket entry 21). The motion is now ripe for consideration.

## II. ANALYSIS

### A. Applicable Law

#### 1. *Rule 12(b)(6) Motion to Dismiss Standard*

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  However, a court only considers a defendant's attachment if it is "referred to in the plaintiff's complaint and [is] central to her claim." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)), *cert. denied*, 552 U.S. 1182 (2008).  Documents meeting these requirements "assist[ ] the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal*, 495 F.3d at 205 (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550

U.S. at 555 (internal citation, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

    The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

2. *Rule 9(b) Standard for Pleading Fraud*

A complaint need only recite a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). When, however, defendants are charged with fraudulent activity, the plaintiff must state with particularity the circumstances constituting fraud. FED. R. CIV. P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Fifth Circuit interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001); see also *Benchmark Electronics, Inc. v. J.M. Huber Corporation*, 343 F.3d 719, 724 (5th Cir. 2003) (stating that Rule 9(b) requires the plaintiff to lay out "the who, what, when, where, and how" of the alleged fraud).

Rule 9(b) permits a plaintiff to allege generally the defendant's intent to commit fraud. FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). A mere allegation that the defendant had the requisite intent, however, will not satisfy Rule 9(b). *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994); *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1068 (5th Cir. 1994). To adequately plead fraudulent intent, the plaintiff must set forth specific facts that support an inference of fraud. *Tuchman*, 14 F.3d at 1068. The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show the defendant's motive. See *id.*

3. *Overtime and Travel Pay Under the FLSA*[1]

This case concerns two specific employee rights under the FLSA and related regulations. First, 29 U.S.C. § 207 requires employees to receive "a rate not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of forty a week. Second, employers must compensate covered employees for "[t]ime spent by an employee in travel as part of his principal activity . . .." 29 C.F.R. § 785.38. The term "principal activity" includes activities "performed as part of the regular work of the employees in the ordinary course of business . . . [t]he work is necessary to the business and is performed by the employees, primarily for the benefit

---

[1] This is an excerpt from the court's prior opinion detailing the provisions of the FLSA pertinent to this dispute. Memorandum Opinion and Order at 11-12.

of the employer . . ..." *Vega ex rel. Trevino v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994) (alteration in original) (quoting *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)). While home-to-work travel is not compensable, *see* 29 U.S.C. § 254, if "an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work" and is therefore compensable. 29 C.F.R. § 785.38. To remedy violations of the above rights, the FLSA creates both a private cause of action and collective action: "An action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

### 4. *The Necessity of Meaningful Agreement for a Valid Section 216(c) Waiver*

In relevant part, 29 U.S.C. § 216(c) states:

> The [DOL] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the *agreement* of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

(emphasis added). The statutory text indicates that an employee's "agreement" is necessary for an effective Section 216(c) waiver. "Typically an employee manifests assent by signing a receipt (either a standard WH-58 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver." *Favata v. National Oilwell Varco, L.P.*, C.A. No. C-12-082, 2013 WL 1222378, at *3 (S.D. Tex. Feb. 7, 2013) (quoting *Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141, 1147 (9th Cir. 2007)) (internal quotations omitted). However, several recent decisions indicate that the employee's decision to sign the Form WH-58 must be "informed and meaningful" to effectuate a valid waiver. *Woods v. RHA/Tennessee Group Homes, Inc.*, 803 F. Supp. 2d 789, 800 (M.D. Tenn. 2011). Absent an "informed and meaningful" decision, any agreement is merely "illusory." *Id.*

To arrive at this conclusion, the *Woods* court discussed the Fifth Circuit case of *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537 (5th Cir. 1977). There, in the process of concluding that an employee did execute a valid Section 216(c) waiver, the Fifth Circuit noted that "[t]he employee has never claimed that the release was obtained through fraud [and] the trial court did not address the question of the employee's knowledge . . . ." *Id.* at 538. By mentioning the absence of evidence indicating the existence of either of these factual circumstances, the Fifth Circuit implied that their presence could be significant. Specifically, an employer's fraud and an employee's ignorance of the legal effect of his signature might rebut the presumption of a

"meaningful agreement" in which the employee "meant to settle [his FLSA] claims." *Woods*, 803 F. Supp. 2d at 800 (citation omitted).

Drawing from *Sneed*, the *Woods* court provides three circumstances where, even if an employee signed a Form WH-58, the court should inquire into whether the agreement is meaningful: If the "employer has affirmatively misstated material facts regarding the waiver, withheld material facts regarding the waiver, or unduly pressured the employees into signing the waiver." *Id.* at 800. Because the employer in *Woods* failed to inform employees of a pending collective action and implied that signing the waiver was mandatory, the court allowed employees to vacate their waivers. *Id.* at 801.

Consistent with *Sneed* and *Woods*, the District Court for the Northern District of Illinois stressed that "the relevant inquiry in a FLSA waiver situation is whether the plaintiffs intended to settle their claims . . . ." *Victoria v. Alex Car, Inc.*, No. 11 C 9204, 2012 WL 1068759, at *4 (N.D. Ill. Mar. 29, 2012). The employer in *Victoria* provided no translator to assist the predominantly Spanish speaking employees with reading the waivers and instructed the employees that they "needed" to sign the forms. *Id.* at *3. Believing the employees possessed a plausible claim that their waivers did not represent an intent to settle their claims, the court refused to enforce the Section 216(c) waivers on a motion to dismiss. *Id.* at *4.

This conclusion appears to conflict with the Northern District of Illinois's prior decision in *Carino v. B & M Auto Collisions Center*, No. 03 C 3394, 2004 WL 413299 (N.D. Ill. Jan. 30, 2004). In *Carino*, the court stated that "[i]t is axiomatic that a party cannot escape the legal ramifications of a signature by professing ignorance of the document signed, even if that ignorance is caused by an inability to read the language in which the document is written." *Id.* at *3. To distinguish *Carino*, the *Victoria* court noted that the *Carino* decision came "at the summary judgment stage, after greater factual development" and "the record showed that a translator was present when the [employee in *Carino*] signed the waiver form," a resource unavailable to the employees in *Victoria*. 2012 WL 1068759, at *4. Despite the court's attempt, satisfactorily reconciling the *Victoria* decision with the categorical position stated in *Carino* may be impossible. The *Victoria* decision more likely represents an altogether different interpretation of Section 216(c) that requires "meaningful agreement" for an effective waiver. *Woods*, 803 F. Supp. 2d at 800 (citation omitted). Relying on the Fifth Circuit's comments in *Sneed*, this court concludes that "meaningful agreement" is an essential component of a Section 216(c) waiver. *Id.*

A recent decision from this court supports this conclusion. In *Munoz v. Loh Enterprises, Inc.*, the employer moved for Rule 11 sanctions, arguing that "by signing the WH-58s, [the employees] waived their right to sue under the FLSA, and,

therefore, [their] claims are frivolous." Order from *Munoz v. Loh Enterprises, Inc.* (Solis, J.), Civil Action No. 3:13-CV-1100-P, at 6-7 *attached to* Plaintiffs' Response as Exhibit A. The employees argued that while they signed the Form WH-58s, "their signatures do not constitute an agreement where they only speak Spanish, the forms were in English and were not translated, and there was a misrepresentation as to what they [sic] payment was for." *Id.* at 7. While the court did not express an opinion on the merits of the claim, when discussing the validity of a Section 216(c) waiver, it quoted *Dent* to note that a valid waiver requires "meaningful agreement." *Id.* at 7, 7 n.2. Because the employees' factual allegations potentially undermined the meaningfulness of their waivers, the court was "not convinced that [the employees'] argument [was] frivolous" and accordingly denied the motion for sanctions.[2] *Id.* at 7.

---

[2] In *Solis v. Hotels.com Texas, Inc.*, No. Civ. A. 3:03-CV-0618-L, 2004 WL 1923754, at *2 (N.D. Tex. Aug. 26, 2004) (Lindsay, J.), this court stated that *Sneed's* "oblique reference" to a potential fraud exception "is insufficient to serve as a basis for circumventing the clear and unequivocal portions of § 216(c)." However, in *Solis*, the employees "failed to create a genuine issue of material fact that the alleged fraudulently altered records were actually relied on by the DOL in determining the back wages due." *Id.* at *3. Therefore, the issue of whether an employer's fraud can invalidate an otherwise effective Section 216(c) waiver was not before the court. Furthermore, as detailed above, the proper inquiry focuses on whether an employee's agreement is meaningful. While an employer's overtly fraudulent conduct will almost certainly vitiate the meaningfulness of an agreement, an employer's actions or inactions not motivated by a fraudulent intent can also undermine the meaningfulness of an agreement.

B. Application of Law to the Present Dispute

1. *The Plaintiffs Make Plausible Claims that
the Defendants Violated the FLSA*

The plaintiffs' amended complaint makes plausible claims for violations of the FLSA's overtime and travel pay requirements. By providing specific date ranges for the violations, estimates of the overtime hours worked, and details for why the travel time was compensable, the plaintiffs have "raise[d] a right to relief about the speculative level, on the assumption that all the allegations in the complaint are true . . . ." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

The defendants rely heavily on *Coleman v. John Moore Services, Inc.*, No. H-13-2090, 2014 WL 51290 (S.D. Tex. Jan. 7, 2014), to support their motion. *See* Defendants' Brief in Support of Their First Amended Motion to Dismiss Under Rule 12(b)(6) ("Defendants' Brief") at 3-4 (docket entry 18). The employee in *Coleman* claimed that he worked in excess of forty hours a week during one or more weeks and did not receive one and one-half time compensation for the overtime hours. 2014 WL 51290, at *1. These allegations "provide[d] [no] factual context [to] form the basis for his claimed FLSA violation." *Id.* at 4. By contrast, in the present case, the plaintiffs provide specific estimates of the number of overtime hours they worked over an approximately three-year period of their employment. *See* Amended Complaint ¶¶ 18, 20, 21, 23 ("worked an average of 60 hours per week;" "2 hours

each week went completely unpaid;" and "performed 7 overtime hours per week that went completely unpaid: 6 overtime hours of weekly travel time and one overtime hour for daily loading and unloading"). These allegations provide sufficient "factual context," in the words of *Coleman*, 2014 WL 51290, at *4, to withstand a Rule 12(b)(6) motion to dismiss.

### 2. *Discovery is Necessary to Determine if the Plaintiffs' Section 216(c) Waivers Represent a Meaningful Agreement*

A waiver is effective only when it indicates that an employee "meant to settle [his FLSA] claims." *Woods*, 803 F. Supp. 2d at 800 (citation omitted). The plaintiffs allege that they "could not and did not agree to waive [their] rights under the FLSA" with respect to claims covered in the DOL-settlement's time period because the Form WH-58s were "not translated from English to Spanish"[3] and the defendants provided no alternative notice that the forms waived the plaintiffs' FLSA claims. Amended Complaint ¶¶ 19, 22. Furthermore, they aver that the employer "led [them] to believe that [they] would need to sign the Receipt for Payment of Back Wages to receive the checks offered to [them] . . . ." *Id.* These allegations, which the court

---

[3] The defendants cite *Duran v. Intex Aviation Services, Inc.*, Case No. 95-11180, 1996 WL 556967, 1996 U.S. App. LEXIS 42732, at *7 (5th Cir. Sept. 13, 1996), for the proposition that "Texas courts have consistently held that individuals are charged with knowing and understanding the contents of what they sign." *See also* Defendants Brief at 8. Accordingly, under Texas law, an individual's illiteracy of the English language does not void an otherwise acceptable waiver. *Duran*, 1996 U.S. App. LEXIS 42732, at *6-8; *see also* Defendants' Brief at 8-9. In the present case, however, the court must determine what constitutes an "agreement" under Section 216(c) of the FLSA -- an issue of federal law rather than Texas law.

must assume to be true on a motion to dismiss, undermine the meaningfulness of any agreement between the parties, thereby potentially rendering any waivers "illusory." *Woods*, 803 F. Supp. 2d at 800. The plaintiffs have therefore made a plausible claim for relief for the allegations covered by the time period of the DOL-settlement agreement.[4]

### 3. *Rule 9(b)'s Heightened Pleading Standard for Fraud is Inapplicable*

The court does not impose Rule 9(b)'s heightened pleading standard because an employer's intent may not impact the validity of a Section 216(c) waiver. See *Victoria*, 2012 WL 1068759, at *2 (failing to impose Rule 9(b)'s pleading standard in a factually similar case). If the essential component of a valid waiver is "meaningful agreement" between the parties, *Woods*, 803 F. Supp. 2d at 800, then arguably the subjective intent driving an employer's actions is irrelevant. Instead, "the relevant inquiry [should be] whether the *plaintiffs intended* to settle their claims . . . ."[5] *Victoria*, 2012 WL 1068759, at *4 (emphasis added); see also *Sneed*, 545 F.2d at 538 (indicating that an "employee's knowledge" informs whether a waiver is valid).

---

[4] At this stage of the case, the court does not determine what factual circumstances might undermine a Section 216(c) waiver. It only concludes that the factual allegations in the complaint create a plausible claim that the plaintiffs' waivers do not represent a "meaningful agreement."

[5] Under this interpretation, when determining the validity of Section 216(c) waivers, courts often discuss defendants' fraudulent intent because actions performed with such an intent can affect an "employee's knowledge," *Sneed*, 545 F.2d at 538, an important element in determining waiver.

- 16 -

Rule 9(b) protects defendants' reputations from frivolous claims "charging the commission of acts that involve some degree of moral turpitude." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1296 (3d ed. 2004). However, consistent with the reasoning in the paragraph above, the amended complaint does not allege the defendants possessed a fraudulent intent.[6] *See* Amended Complaint ¶¶ 19-20, 22-23 (discussing the defendants' actions and inactions but making no allegation regarding the defendants' state of mind). When the complaint lacks a direct allegation that the defendants acted with fraudulent intent, the defendants could have performed the alleged actions with either a fraudulent or benign intent, and the plaintiffs can potentially invalidate a waiver without demonstrating the defendants' fraudulent intent, the court concludes that imposing Rule 9(b)'s pleading standard would be improper..

Although the court does not impose Rule 9(b)'s heightened *pleading standards*, on a motion for *summary judgment* either party can contend that an employer's fraudulent intent, or lack thereof, independently influences the validity of a Section 216(c) waiver. During discovery, the plaintiffs may uncover evidence indicating the

---

[6] In their response brief, the plaintiffs attempt to demonstrate that their complaint indicates the defendants' fraudulent intent. Plaintiffs' Response at 10-12. This attempt responds directly to the defendants' incorrect argument that fraudulent inducement under Texas law, one element of which is proving the defendants' fraudulent intent, is necessary to invalidate a Section 216(c) waiver. Defendants' Brief at 6-7; see also *supra* footnote 4. In actuality, the complaint's allegations fail to present a definitive position on the defendants' intent. *See* Amended Complaint ¶¶ 19-20, 22-23.

defendants' intent.  The court's refusal to impose Rule 9(b)'s heightened pleading requirements does not require exclusion of such evidence on a motion for summary judgment.  A thorough factual record will assist the court in making the determination of whether the section 216(c) waivers are valid in the circumstances of this case.  Moreover, the plaintiffs are not "instituti[ng] a fraud-based action in order to discover whether unknown wrongs actually have occurred . . ..'"  5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1296.  The plaintiffs plausibly state a claim for relief without any allegation of fraud and thus possess a right to access discovery without surmounting Rule 9(b)'s hurdles.

### III.  CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss is **DENIED**.

**SO ORDERED**.

March 31, 2015.

_____
**A. JOE FISH
Senior United States District Judge**